United States District Court
Southern District of Texas

**ENTERED**

April 25, 2016

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LUCINDA FRANCIS,                    §
                                    §
            Plaintiff,              §
                                    §
v.                                  §    CIVIL ACTION NO. H-14-1277
                                    §
SOUTH CENTRAL HOUSTON ACTION        §
COUNCIL INC. D/B/A CENTRAL          §
CARE COMMUNITY HEALTH CENTER,       §
                                    §
            Defendant.              §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Lucinda Francis ("Francis"), brings this action against defendant, South Central Houston Action Council Inc., d/b/a Central Care Community Health Center ("CCCHC"), for wrongful discharge in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140, and for employment discrimination based on national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2, et seq., and age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1).[1]  Pending before the court is Defendant Central Care Community Health Center's Motion for Summary Judgment (Docket Entry No. 56).  For the reasons explained below, defendant's motion for summary judgment will be granted, and this action will be dismissed.

---

[1]Plaintiff's Original Complaint, Docket Entry No. 1.

## I. **Undisputed Facts**

In February of 2012 Francis was hired by CCCHC as a full-time medical records clerk.[2] The duties of a medical records clerk include keeping records, scanning lab information into patients' charts, preparing records for doctors, and entering information into the computer system for doctors to access from their laptops. On the day she was hired Francis was given an orientation that included receipt of CCCHC's employee handbook, which included information about employee work hours, including lunch periods and breaks, the method for handling tardiness and absenteeism, and CCCHC's employee benefits program. Francis acknowledged having received the employee handbook along with instructions to read the handbook and seek clarification of matters she did not understand.[3]

All of CCCHC's new hires undergo a 90-day probationary period at the end of which they are considered full-time employees eligible to participate in the employee benefits program.[4] During her 90-day probationary period Francis worked at CCCHC's Martin

---

[2]Personnel Action Review Form, Exhibit 7 to Defendant Central Care Community Health Center's Motion for Summary Judgment ("Defendant's MSJ"), Docket Entry No. 57-4, p. 2.

[3]Video and Oral Deposition of Lucinda Francis ("Francis Deposition"), Exhibit 2 to Defendant's MSJ, pp. 17:25-18:11; 38:8-20, Docket Entry No. 56-2, pp. 6; 11. See also Lucinda Francis's Application for Employment, Exhibit 4 to Defendant's MSJ, Docket Entry No. 57-1, pp. 2-6, and Orientation Checklist, Exhibit 5 to Defendant's MSJ, Docket Entry No. 57-2.

[4]Affidavit of LaToya Darden ("Darden Affidavit"), ¶ 9, Exhibit 6 to Defendant's MSJ, Docket Entry No. 57-3, p. 3.

Luther King ("MLK") location where she was one of three medical records clerks.[5]  Following her 90-day probationary period Francis received a good review,[6] and she was transferred to CCCHC's Riverside "Delano" location where she was the only medical records clerk.[7]  The site manager at CCCHC's Delano location was Gregory Barnes ("Barnes").  Barnes supervised Francis and the front desk staff, which consisted of approximately six employees.[8]  In addition to performing the duties of a medical records clerk, Francis also relieved the front desk staff during lunch, and occasionally manned the front desk when needed due to front desk employee absences.[9]  Francis was scheduled to report to work at 8:00 a.m. Monday through Friday,[10] and her lunch break was scheduled to be from 12:00 p.m. to 1:00 p.m., although her lunch hour sometimes fluctuated depending on the coverage needed at the front desk.[11]

---

[5]Francis Deposition, Exhibit 2 to Defendant's MSJ, p. 28:7-16, Docket Entry No. 56-2, p. 8.

[6]Employee Job Performance Evaluation dated May 30, 2012, Exhibit D to Plaintiff's Response, Docket Entry No. 60-1, pp. 9-14.

[7]Francis Deposition, Exhibit 2 to Defendant's MSJ, pp. 25:19-20, and 28:11-16, Docket Entry No. 56-2, p. 8.

[8]Id. at 26:24-27:7, Docket Entry No. 56-2, p. 8.

[9]Id. at 25:11-26:23, Docket Entry No. 56-2, p. 8.

[10]Id. at 19:21, Docket Entry No. 56-2, p. 6.

[11]Id. at 20:4-22, Docket Entry No. 56-2, p. 6.  See also Affidavit of Erica Arrezola ¶ 6, Exhibit 1 Tab A to Defendant's
(continued...)

-3-

Shawn Simme was CCCHC's Employee Benefits Broker when Francis worked at CCCHC.[12]  His records show an initial contact with Francis during the June 2012 enrollment period when she applied for and enrolled in the dental plan.[13]  In 2013 Francis remained enrolled in the dental plan and "elected into the medical plan as of June 2013."[14]  Francis received health care benefits for the months of June and July 2013.[15]

On July 25, 2013, at 7:40 a.m., Francis sent a text message to Barnes stating that she would be late for work because she needed to take her daughter to the airport, but not stating when, exactly, she would report to work.  When Francis reported to work at 1:50 p.m., Barnes discharged her for being insubordinate, and for violating company policy regarding absenteeism and tardiness.[16]

---

[11](...continued)
MSJ, Docket Entry No. 56-1, p. 2.

[12]Affidavit of Shawn Simme ("Simme Affidavit") ¶¶ 1-3, Exhibit 8 to Defendant's MSJ, Docket Entry No. 58, p. 2.

[13]Id. at ¶ 8. Docket Entry No. 58, p. 3.  See also Employee Election Form for Medical Effective May 15, 2012 and for Dental Effective May 1, 2012, and Employee Enrollment Form, Exhibit 8-A to Defendant's MSJ, Docket Entry No. 58, pp. 6-9.

[14]Id.  See also Francis 2013 Enrollment Form, Exhibit 8-B to Defendant's MSJ, Docket Entry No. 58, pp. 11-15.

[15]Id.  See also Certificate of Health Plan Coverage, Exhibit 8-C to Defendant's MSJ, Docket Entry No. 58, pp. 17-18.

[16]Francis Deposition, pp. 42:17-43:6; 48:17-49:9; 94:24-95:10; 97:1-25, Exhibit 2 to Defendant's MSJ, Docket Entry No. 56-2, pp. 12-14, 26.  See also Supervision and Counseling From, Exhibit
(continued...)

-4-

## II.  **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. Factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Id.

---

[16](...continued)
6-G to Defendant's MSJ, Docket Entry No. 57-3, p. 22.

### III.  **Analysis**

Francis asserts claims for employment discrimination based on age and national origin in violation of the ADEA and Title VII, respectively, and for wrongful discharge in violation ERISA.[17] CCCHC argues that Francis's "age and national origin discrimination claims fail as a matter of law because [Francis] cannot survive the *McDonnell Douglas* burden shifting analysis."[18]  CCCHC argues that Francis's "ERISA claim fails as a matter of law because [Francis] was not a 'participant' within the meaning of the statute and [CCCHC's] motive for terminating [Francis] was not unlawful."[19] Asserting that she has established a prima facie case of employment discrimination, Francis argues that summary judgment is not warranted on her ADEA or Title VII claims because CCCHC's shift of position on certain arguments is indicative of pretext,[20] and that summary judgment is not warranted on her ERISA claim for wrongful discharge because temporal proximity shows a causal link between her enrollment in CCCHC's ERISA plan and her termination.[21]

---

[17]Plaintiff's Original Complaint, Docket Entry No. 1, pp. 4-7 ¶¶ 16-33.

[18]Defendant's MSJ, Docket Entry No. 56, p. 13.

[19]Id. at 26.

[20]Plaintiff's Response, Docket Entry No. 60, pp. 5, 8-11.

[21]Id. at 5, 11-15.

A.    **Francis Fails to Raise Fact Issue on ADEA and Title VII Claims**

Asserting that she is over forty years old and that she is a naturalized citizen who was born in Antigua and Barbuda, Francis alleges that she was terminated because of her age in violation of the ADEA, and her national origin in violation of Title VII.[22] CCCHC argues that it is entitled to summary judgment on Francis's age discrimination claims because Francis cannot establish (1) that she was qualified for her position, (2) that he was treated less favorably than non-protected individuals under nearly identical circumstances, or (3) that CCCHC's legitimate, non-discriminatory reasons for discharging her are pretexts for discrimination based on her age or national origin.[23]

1.    Applicable Law

The ADEA provides, in relevant part, that it is unlawful for an employer "to discharge any individual or otherwise discriminate

---

[22]Plaintiff's Original Complaint, Docket Entry No. 1, p. 5 ¶24 ("Plaintiff is an individual who is over 40 years of age. Plaintiff was employed by Defendant as an at-will employee. Plaintiff's employment was terminated by Defendant because of her age.  Defendant acted upon an available excuse to illegally remove Plaintiff from her employment and service with Central Care Community Health Center.  Plaintiff was discriminated against as a result of her age.); and p. 6 ¶30 ("Plaintiff was employed by Defendant as an at-will employee.  Plaintiff is [a] nat[ura]lized citizen who was born in Antigua and Barbuda.  Defendant acted upon an available excuse to illegally remove Plaintiff from her employment and service with [CCHC], rather, Plaintiff was discriminated against as a result of her national origin. . .").

[23]Defendant's MSJ, Docket Entry No. 56, pp. 13-26.

against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). Claims of employment discrimination brought under the ADEA and Title VII can be proven through direct or circumstantial evidence. Russell v. McKinney Hospital Venture, 235 F.3d 219, 222 & n. 3 (5th Cir. 2000) (quoting Bauer v. Albemarle Corp., 169 F.3d 962, 966 (5th Cir. 1999) ("The same evidentiary procedure for allocating burdens of production and proof applies to discrimination claims under both [Title VII and the ADEA].")). Direct evidence of discrimination "is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Rachid v. Jack In The Box, 376 F.3d 305, 310 n. 6 (5th Cir. 2004) (quoting Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002), cert. denied, 123 S. Ct. 2572 (2003)). Francis has not cited direct evidence of discrimination and does not argue that this is a direct evidence case. Instead, Francis acknowledges that her claims for employment discrimination are based on circumstantial evidence.[24]

---

[24]Plaintiff's Response, Docket Entry No. 60, p. 8 ("Ms. Francis (continued...)

Francis may establish a claim of discriminatory discharge under either the ADEA or Title VII based on circumstantial evidence by using the framework set forth in <u>McDonnell Douglas v. Green</u>, 93 S.Ct. 1817 (1973). The <u>McDonnell Douglas</u> framework is a burden-shifting exercise pursuant to which plaintiffs carry the initial burden of demonstrating a <u>prima facie</u> case of discrimination. To establish a <u>prima facie</u> case of intentional discrimination based on age or national origin using the <u>McDonnell Douglas</u> framework Francis must show that (1) she belongs to a protected class, (2) she was qualified for her job; (3) the defendant made an adverse employment decision based on her national origin or her age; and (4) she was replaced by or treated less favorably than someone outside her protected classes. <u>See</u> <u>Russell</u>, 235 F.3d at 223-24. If Francis makes a <u>prima facie</u> showing of discrimination, the burden shifts to CCCHC to articulate a legitimate, non-discriminatory reason for her discharge. If CCCHC articulates a legitimate, nondiscriminatory reason for Francis's discharge, the presumption of discrimination disappears. <u>Id.</u> at 222. Francis retains the ultimate burden of proving intentional discrimination. <u>Id.</u> (citing <u>St. Mary's Honor Center v. Hicks</u>, 113 S. Ct. 2742 (1993)). Under Title VII, Francis must present evidence capable of proving that (1) CCCHC's state reason for discharging her is not

---

[24](...continued)
Establishes a Prima Facie Case for Discrimination . . .").

true, but is instead a pretext for discrimination (pretext alternative), or (2) CCCHC's reason, though true, is only one of the reasons for its conduct, and another motivating factor is her national origin (mixed-motives alternative). Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003) (pretext); Desert Palace, Inc. v. Costa, 123 S. Ct. 2148, 2154-55 (2003) (mixed-motives). The ADEA, however, does not authorize a mixed-motives age discrimination claim. To raise a fact issue for trial on her ADEA claim, Francis must present evidence capable of proving that age was the "but for" cause of the adverse employment action. Gross v. FBL Financial Services, Inc., 129 S. Ct. 2343, 2351 (2009).[25]

> ### 2.   Application of the Law to the Undisputed Facts
>
> (a)   Francis Has Established a Prima Facie Case

There is no dispute that Francis has met the two of the four prongs of proving a prima facie case, i.e., that her age, over 50, and her national origin, Antiguan, mean that she belongs to protected groups, and that her discharge means that she suffered an

---

[25]In Gross, 129 S. Ct. at 2351 (2009), the Supreme Court held that the Title VII standard for so-called "mixed-motives" cases was not applicable to claims under the ADEA. The Supreme Court, however, declined to decide whether the general evidentiary framework of McDonnell Douglas used in Title VII cases is appropriate in the ADEA context. Id. at 2349 n. 2. The court therefore remains bound by the burden-shifting framework for ADEA cases that has been employed consistently by the Fifth Circuit. See Sandstad, 309 F.3d at 896 n. 2 ("This circuit applies the McDonnell Douglas rubric to both Title VII and ADEA claims.") (citing Russell, 235 F.3d at 222 n. 3)).

adverse employment action.  CCCHC argues that Francis is unable to satisfy the remaining two prongs of her prima facie case because she was not qualified for her position when she was discharged, and because she is unable to show that she was treated less favorably than someone outside her protected classes.[26]

CCCHC's argument that Francis was not qualified for her position has no merit because it is undisputed that Francis had successfully completed a 90-day period of probation for which she received a favorable evaluation, she remained employed for over a year thereafter, and the only reason CCCHC argues she was not qualified for her position is that she was insubordinate and failed to report for work on time.  The performance issues for which CCCHC discharged Francis are not evidence capable of establishing that Francis was not qualified for her position.  See Bienkowski v. American Airlines, Inc. 851 F.2d 1503, 1505-06 (5th Cir. 1988).  In Bienkowski, the Fifth Circuit held that to show qualification at the prima facie stage of an employment discrimination analysis, a plaintiff challenging his termination did not have to show that he was meeting his employer's reasonable expectations.  Id. at 1505. Instead, the "fact that [a plaintiff] was hired initially indicates that he had the basic qualifications," id., and thus to establish qualification, plaintiff must merely show "that he continued to posses the necessary qualifications for his job at the time of the

---

[26]Defendant's MSJ, Docket Entry No. 60, pp. 17-21.

adverse action." Id. at 1506 (explaining that "[b]y this we mean that plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired"). Because there is no evidence that when Francis was discharged, she did not continue to possess the necessary qualifications for her job, has satisfied the qualification prong of her prima facie case.

CCCHC's argument that Francis has failed to present evidence capable of establishing the fourth prong of her prima facie case also lacks merit.  Francis has cited evidence showing that she was replaced by a much younger employee, Keitra Wright, who was in her 20's.  Although Francis has not cited any evidence that Wright is not Antiguan, the court will assume without deciding that Francis has established a prima facie case of national origin discrimination since the court grant will grant CCCHC's motion for summary judgment because Francis has failed to raise a fact issue as to CCCHC's legitimate, non-discriminatory reason for discharging her.  See Manaway v. Medical Center of Southeast Texas, 430 Fed. App'x. 317, 322 (5th Cir. 2011) ("Because the burden for establishing a prima facie case is 'very minimal,' see Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996) . . . and because we decide Manaway's Title VII and ADEA claims on the basis of pretext, we assume, without deciding, that Manaway has made a prima facie case of discrimination.").

-12-

> (b) CCCHC Has Articulated Legitimate, Nondiscriminatory
> Reason for Discharging Francis

CCCHC argues that Francis was discharged for being insubordinate and violating the company's policies and procedures in regards to reporting absenteeism and tardiness. As evidence of the insubordination and policy violations for which Francis was discharged, CCCHC cites Francis's own deposition testimony that she was scheduled to report to work at 8:00 a.m. Monday through Friday,[27] a February 5, 2013, email showing that Francis's scheduled lunch period was from 12:00 p.m. to 1:00 p.m.,[28] the section of CCCHC's employee handbook stating that insubordination and failure to notify a supervisor of absenteeism or tardiness at least two hours before a shift starts is cause for discharge,[29] and the Supervision and Counseling Form dated July 25, 2013, signed by Francis, her supervisor, Barnes, and by CCCHC's CEO LaToya Darden.[30]

---

[27]Id. at 22 (citing Francis Deposition, Exhibit 2 to Defendant's MSJ, Docket Entry No. 56-2, pp. 9:13-25, 20:1-22).

[28]Id. (citing Exhibit 1 to Defendant's MSJ, Docket Entry No. 56-1, p. 5).

[29]Id. at 23 (citing Exhibit 6-C to Defendant's MSJ, Docket Entry No. 57-3, p. 12 ("Discharge: Any employee will be immediately terminated from the Center unless their Supervisor makes a decision to retain them.  The Supervisor will give the reason for retention in writing to the CEO.  Major Violations . . . ● Insubordination – willful violation or failure to comply with reasonable orders or directions given by a supervisor.  ● Failure of an employee to give supervisor notice of an absence.  Employee must call Supervisor at least 2 hours before shift starts for absenteeism or tardiness.").

[30]Id. at 24 (citing Exhibit 6-G to Defendant's MSJ, Docket
(continued...)

-13-

The Supervisor's Remarks on the Supervision and Counseling Form state the reasons for Francis's discharge:

> As stated in the employee handbook under major violations an employee is subject to immediate termination for insubordination and failure to follow proper policies and procedures in regards to clocking in and out.  On July 24, 2013, Mr. Francis was told by her supervisor to take lunch from 12p-1p due to a scheduled clinic event in which Ms. Francis did not clock out for nor did she fill out a mispunch form which is required if an employee does not clock in or out.  Ms. Francis then left the facility from approximately 1:30-2:30 without prior notification from management that she was going to be out for additional "unaccounted for" time.  This unaccounted time was verified by the site manager via random phone calls with coworkers around 9am and 1:40 pm.  Ms. Francis did call her supervisor at 2:30 and left a message with no specific information regarding time away.   On July 25, 2013, Ms. Francis texted her supervisor at 7:40 am to indicate that she would be late due to transporting her daughter to the airport, no time was given to return to work.   She eventually came in at 1:50 pm.   These actions have culminated in putting undue burdens on her cohorts to make adjustments.[31]

CCCHC argues that "Francis' actions, namely failing to contact her supervisor in a timely fashion, and reporting to work nearly six (6) hours late, coupled with her insubordination, renders CCCHC's decision to terminate Francis overwhelmingly legitimate."[32]

The Fifth Circuit has repeatedly held insubordination and violations of company policy to be legitimate reasons for discharge.  See Aldrup v. Caldera, 274 F.3d 282, 286 (5th Cir.

---

[30] (...continued)
Entry No. 57-3, p. 22).

[31] Exhibit 6-G to Defendant's MSJ, Docket Entry No. 57-3, p. 22.

[32] Defendant's MSJ, Docket Entry No. 56, p. 24.

2001) ("The failure of a subordinate to follow a direct order of a supervisor is a legitimate nondiscriminatory reason for taking adverse employment action.") (citing Chaney v. New Orleans Public Facility Management, Inc., 179 F.3d 164, 167 (5th Cir. 1999), cert. denied, 120 S. Ct. 1439 (2000) (concluding that the failure of a subordinate to follow a direct order of a supervisor is a legitimate nondiscriminatory reason for discharging that employee)); Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995) (recognizing violation of a work rule as a legitimate nondiscriminatory reason for adverse employment action). See also Manaway, 430 Fed. Appx. at 322 (insubordination and failure to follow instructions are legitimate, non-discriminatory reasons for termination). Because CCCHC has satisfied its burden of producing a legitimate, non-discriminatory reason for discharging Francis, any presumption of discrimination created by her prima facie case disappears, and Francis must cite evidence of pretext or discriminatory motive capable of creating a genuine issue of material fact for trial.

> (c)   Francis Fails to Cite Evidence of Pretext or Discriminatory Motive

Francis does not dispute that she did the things that CCCHC argues that she did, i.e., that she failed to take her July 24, 2013, lunch break from 12:00 p.m. as 1:00 p.m. as instructed, that she was away from work without leave that day from 1:30 p.m. to

2:30 p.m., and that she failed to contact her supervisor at least two hours before she was absent or tardy for work the next day. Thus, Francis does not dispute that she was insubordinate, and that she violated CCCHC's policies and procedures in regards to reporting absenteeism and tardiness. As evidence that CCCHC's stated reasons for discharging her are not true and, instead, pretexts for discrimination based on age or national origin, Francis argues that the information on the July 25, 2013, Supervision and Counseling Form is not true,[33] that other employees were permitted multiple infractions before termination,[34] and that CCCHC "has shifted its position on certain arguments, which is indicative of pretext."[35]

As evidence that the information on the July 25, 2013, Supervision and Counseling Form is not true, Francis points to the space for "Employee's Remarks" in which she wrote: "This is a case of people telling on each other.  I waited for Ms. Wright just to help out.  Now [I] am fired .  The info[rmation] is untrue in this statement."[36]  But missing from Francis's response is any evidence from which a reasonable fact finder could conclude that her

---

[33]Plaintiff's Response, Docket Entry No. 60, p. 10.

[34]Id.

[35]Id. at 8.

[36]Id. at 10 (citing Exhibit 6-G to Defendant's MSJ, Docket Entry No. 57-3, p. 22).

supervisor's statements were not true. Francis's self-serving and conclusory statements to the contrary are not sufficient to create a fact issue for trial. See Stafford v. True Temper Sports, 123 F.3d 291, 295-96 (5th Cir. 1997) ("Stafford does nothing more than make bare allegations and attempt to argue that a few minor discrepancies in the record constitute proof of improper motive. This simply will not suffice.").

As evidence that other employees were permitted multiple infractions before termination, Francis cites the deposition testimony of CCCHC's CEO, Darden, as establishing that her "supervisor, Gregory Barnes was permitted to resign after multiple absences."[37] But the cited excerpt from Darden's deposition testimony shows, instead, that Barnes — like Francis — was discharged after only two infractions:

Q.   Okay.  And do you know why he left Central Care?

A.   I terminated Mr. Barnes.

Q.   And what was Mr. Barnes terminated for?

A.   For -- what did I tell him?  For not being -- not reporting to his work station.

Q.   All right.  And how did you find out he did not report to his work station?

A.   He told me.

Q.   Okay.  And you say he told you?

---

[37]Id. (citing Video Deposition of LaToya Darden ("Darden Deposition"), Exhibit L to Plaintiff's Response, Docket Entry No. 60-1, p. 34:4-24).

A.    Uh-huh, he told me.

Q.    Okay.  And but for his telling you, would you have
      known that he had not reported?

A.    I knew.

Q.    Okay.  How did you know before he told you?

A.    Because I was asking someone about an event and I
      asked them was Mr. Barnes there and they said no.
      So that's how I knew.

Q.    Okay.  And how many did he -- did he have previous
      mishaps like that before he was terminated?

A.    I believe it was one other time.[38]

As evidence that CCCHC shifted its position, Francis asserts

that

> Defendant appears to have shifted its explanation of the
> facts with respect to its denial [of] Ms. Francis's leave
> request on or about the time her insurance coverage was
> set to begin.  Previously, Defendant asserted an
> affirmative defense that, "Plaintiff's claim fail[s]
> because Defendant denied every employee's request for
> vacation and leave who had not previously requested it."
> See Exhibit G, Defendant's Answer dated February 20,
> 2105.  Now, in its [motion] for summary judgment,
> Defendant claims Ms. Darden's email denying leave
> requests did not apply to Ms. Francis.  This apparent
> shift presents an issue of material fact fit for the view
> of jury panel's assessment.[39]

The email attached as Exhibit G to Francis's response to CCCHC's

motion expressly states: "All Leave request[s] for time off during

the month of **August** will be denied.  This does not include the

_____

[38]Darden Deposition p. 34: 4-24, Exhibit L to Plaintiff's
Response, Docket Entry No. 60-1, p. 49.

[39]Plaintiff's Response, Docket Entry No. 60, p. 11.

leave request[s] already on file, birthdays, or Saturday Clinic makeup. No exceptions."[40]  Because the days that Francis failed to take her lunch break at her assigned time, was away without permission, and failed to notify her supervisor at least two hours before being absent or tardy were in July, not August, the email she cites does not support her argument.

None of the evidence that Francis cites is evidence from which a reasonable fact finder could conclude that CCCHC's articulated reasons for her discharge were not true.  Moreover, Francis has failed to cite any evidence from which a reasonable fact finder could conclude that her discharge was motivated by discriminatory animus based on her age or national origin.

As evidence that her discharge was motivated by age discrimination, Francis merely cites evidence sufficient to establish her prima facie case, i.e., evidence showing that she was replaced by a younger employee, "Keitra Wright, whom Defendant identifies as being in her 20's."[41]  As evidence that her discharge was motivated by national origin discrimination, Francis merely states that CCCHC's CEO, Darden, knew that she was Antiguan.[42]  But

---

[40]Exhibit G to Plaintiff's Response, Docket Entry No. 60-1, p. 28 (emphasis added).

[41]Plaintiff's Response, Docket Entry No. 60, p. 11 (citing Darden Deposition p. 18:14-21, Exhibit L to Plaintiff's Response, Docket Entry No. 60:1, p. 45).

[42]Id. at 10-11 (citing Darden Deposition p. 13:7-25, Exhibit
(continued...)

missing from Francis's response is any evidence from which a reasonable fact finder could conclude that the employee who replaced her was not Antiguan, or that the supervisor who terminated her, i.e., Barnes, knew she was Antiguan. Francis has not offered any evidence in opposition to CCCHC's evidence that on July 24 and July 25, 2013, she was insubordinate and she violated CCCHC's policies and procedures regarding absenteeism and tardiness. Instead, Francis merely asserts that summary judgment is not warranted on her ADEA or Title VII claims because CCCHC's shift of position on certain arguments is indicative of pretext.[43]

In <u>Gee v. Principi</u>, 289 F.3d 342, 347-48 (5th Cir. 2002), the Fifth Circuit held that the plaintiff had satisfied her burden of raising a genuine issue of fact as to pretext by pointing to factual discrepancies in the decision-maker's statements regarding his reasons for the adverse employment action at issue. <u>See also</u> <u>Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.</u>, 482 F.3d 408, 412 n. 11 (5th Cir. 2007) ("[A]n employer's inconsistent explanations for its employment decisions at different times permits a jury to infer that the employer's proffered reasons are pretextual."). Unlike the plaintiff in <u>Gee</u>, who pointed to factual discrepancies in the decision-maker's statements regarding his

---

[42](...continued)
L to Plaintiffs' Response, Docket Entry No. 60:1, p. 44).

[43]<u>Id.</u> at 5 and 8.

-20-

reasons for the adverse employment action at issue, Francis has not pointed to any factual discrepancies in CCCHC's reasons for the adverse employment action at issue here.  Instead, the undisputed evidence shows that (1) when CCCHC discharged Francis, Barnes told Francis that she was being discharged for insubordination and violation of company policies and procedures regarding absenteeism and tardiness,[44] (2) when CCCHC answered Francis's complaint, CCCHC asserted an affirmative defense stating that "Plaintiff's claims fail because Defendant's actions were based on Plaintiff's insubordination in failing to follow proper polices and procedures in regards to clocking in and out,"[45] and (3) when CCCHC filed its motion for summary judgment, CCCHC asserted plaintiff's insubordination and violation of company policies and procedures regarding absenteeism and tardiness as legitimate, non-discriminatory reasons for her discharge.[46]  Because CCCHC has maintained the same position throughout this action, the fact situation in this case is distinguishable from the one presented in Gee.  See Squyres v. Heico Companies, L.L.C., 782 F.3d 224, 234-35 (5th Cir. 2015) (distinguishing Gee from facts showing that "when

---

[44]See July 25, 2013, Supervision and Counseling Form, Exhibit 6-G to Defendant's MSJ, Docket Entry No. 57-3, p. 22.  See also Francis Deposition, pp. 42:17-43:6, Exhibit 2 to Defendant's MSJ, Docket Entry No. 56-2, p. 12.

[45]Defendant's Amended Answer, Docket Entry No. 10, p. 3 ¶ 13.

[46]Defendant's MSJ, Docket Entry No. 56, pp. 21-26.

alleged inconsistent statements are considered in their full context, the inconsistencies disappear").

### 3.  Conclusions as to ADEA and Title VII Claims

For the reasons explained above, the court concludes that Francis has failed to present any evidence from which a reasonable fact-finder could conclude that the legitimate, non-discriminatory reasons that CCCHC has stated for terminating Francis's employment were not true but, instead, were pretexts for age or national origin discrimination.  Therefore, the court concludes that CCCHC is entitled to summary judgment on Francis's claims for employment discrimination under both the ADA and Title VII.

### B.  CCCHC is Entitled to Summary Judgment on Francis's ERISA Claim

Francis alleges that on or about June 5, 2012, after becoming eligible for benefits, CCCHC told her that she could only enroll in the dental plan, but that she had to decline the other available health insurance plans offered to CCCHC employees.  Francis alleges that she was, therefore, denied the full use of the benefits program.  Francis alleges that on or about June 2013, she elected to apply for health insurance provided by CCCHC.  When processed, her health insurance coverage would have become effective on August

1, 2013.[47]   On or about July 25, 2013, CCCHC discharged her.
Francis alleges that she was discharged

> by Defendant after [she] applied to enroll in the
> employee welfare benefit plan provided by Defendant,
> which included health insurance coverage.   Defendant
> acted upon an available excuse to illegal[ly] remove
> Plaintiff from her employment and service with Central
> Care Community Health Center.   Defendant terminated
> Plaintiff because Defendant did not want to provide the
> cost for Plaintiff to receive medical benefits.[48]

CCCHC argues that Francis's "ERISA claim fails as a matter of
law because [she] was not a 'participant' within the meaning of the
statute and [CCCHC's] motive for terminating [her] was not
unlawful."[49]


1.   Francis is a "Participant" Within the Meaning of ERISA

CCCHC argues that

> [b]ecause Francis received health insurance coverage for
> the months of June and July in 2013, she is not a
> participant within the statutory meaning, and thus
> lack[s] standing to bring her ERISA claim. *See Joseph v.*
> *New Orleans Electrical Pension & Retirement Plan*, 754
> F.2d 628 (5th Cir. La.)[, *cert. denied*, 106 S. Ct. 526
> (1985)] (wherein the court granted summary judgment,
> holding that participants who had already received the
> extent of their benefits are not considered
> 'participant(s)' within the statutory meaning of ERISA
> and thus lack standing to bring an ERISA claim).[50]

---

[47]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 3
¶¶ 11-12.

[48]Id. at 4-5 ¶ 18.

[49]Defendant's MSJ, Docket Entry No. 56, p. 26.

[50]Id. at 27-28.

In support of this argument CCCHC cites evidence showing that when Francis completed her probationary period she became a CCCHC employee eligible for benefits; in June of 2012 she enrolled in CCCHC's dental plan; in June of 2013 she remained enrolled in the dental plan and also enrolled in the medical plan; and she received health care benefits for the months of June and July 2013.[51]

Relying on the Fifth Circuit's holding in Joseph, 754 F.2d at 630, CCCHC argues that Francis lacks standing to assert an ERISA claim because she is not a "participant" within the statutory meaning of ERISA since she is neither a current employee who eligible to receive a benefit, nor a former employee with vested benefits in CCCHC's plan. See 29 U.S.C. § 1002(7) (defining the term "participant" to mean "any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . ., or whose beneficiaries may be eligible to receive any such benefit"). CCCHC's reliance on Joseph is misplaced because Joseph is factually distinguishable from this case. In Joseph the plaintiffs were retirees who had elected to receive a lump-sum retirement benefit in lieu of a continuing monthly benefit. Plaintiffs filed suit seeking the benefit of a

---

[51]Id. at 27 (citing Francis Deposition, Exhibit 2 to Defendant's MSJ, Docket Entry No. 56-2, pp. 54:24-55:13; 72:11-73:12; Exhibit 8-A, Francis 2012 Enrollment Form, Exhibit 8-B, Francis 2013 Enrollment Form, and Exhibit 8-C, Certificate of Health Plan Coverage, Docket Entry No. 58, pp. 6-18.

later adopted amendment to the plan, which changed the way benefits were calculated.   The Fifth Circuit held that although the plaintiffs were former employees, they were not "participants" within the statutory meaning of ERISA because they had no present or future right to benefits and the plan no longer had an obligation to them.   Joseph, 754 F.2d at 630.

Francis argues that she is a participant because when she was discharged she had a present and future right to her healthcare benefits.   Francis argues that "[h]ad Defendant not terminated [her], she would have continued to enjoy health and dental care."[52] Francis's argument that she is a participant eligible to assert an ERISA claim is governed by the Fifth Circuit's decision in Christopher v. Mobil Oil Corp., 950 F.2d 1209 (5th Cir.), cert. denied, 113 S. Ct. 68 (1992).   In Christopher the Fifth Circuit recognized that "[a] discharge to prevent vesting of benefits in violation of [§ 1140] by definition must be challenged by someone other than a current employee or someone with a claim to vested benefits."   950 F.2d at 1222.   Reasoning that "it would seem more logical to say that but for the employer's conduct alleged to be in violation of ERISA, the employee *would* be a current employee with a reasonable expectation of receiving benefits," id. at 1221, the Fifth Circuit held that "the employer should not be able through its own malfeasance to defeat the employee's standing."   Id.   See

---

[52]Plaintiff's Response, Docket Entry No. 60, p. 12.

Cobb v. Central States, 461 F.3d 632, 638 (5th Cir. 2006), cert. denied, 1153 (2007) (holding in Christopher "restored ERISA standing to individuals who had standing but were divested of that standing through the ERISA violations of their employer").

Francis asserts that she has been deprived of ERISA benefits, i.e., medical insurance, that she would have otherwise been entitled to receive had CCCHC not wrongfully discharged her in violation of ERISA. Because CCCHC does not dispute that when she was discharged Francis was a participant in its ERISA-governed employee benefit plan, Francis is a "participant" for purposes of the ERISA claim asserted in this action. See Christopher, 950 F.2d at 1221-22. Accordingly, CCCHC's argument that it is entitled to judgment as a matter of law because Francis is not a participant within the statutory meaning of ERISA has no merit.

2.    Francis Fails to Raise Fact Issue for ERISA Claim

(a)   Applicable Law

ERISA prohibits an employer from terminating or discriminating against an employee for exercising the right to obtain plan benefits or to interfere with the employee's right to do so. The relevant section of the statute provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, or for the purpose of interfering with the

-26-

> attainment of any right to which such participant may
> become entitled under the plan.

29 U.S.C. § 1140. To establish a prima facie case of discriminatory discharge under § 1140, plaintiff must show that (1) she is entitled to ERISA's protection; (2) she was qualified for the position from which she was discharged; and (3) she was discharged in retaliation for exercising an ERISA right or to prevent attainment of benefits to which she would have become entitled under an employee benefit plan. See Holztclaw v. DSC Communications Corp., 255 F.3d 254, 260 (5th Cir. 2001). Specific discriminatory intent is an essential element of a plaintiff's retaliation claim. Stafford, 123 F.3d at 295 (citing Rogers v. International Marine Terminals, Inc., 87 F.3d 755, 761 (5th Cir. 1996)). "[A] plaintiff need not prove that the discriminatory reason was the only reason for the discharge but he must show that the loss of benefits was more than an incidental loss from his discharge, and this inference of discrimination can be prove[d] by circumstantial evidence." Holtzclaw, 255 F.3d at 260 (citing Stafford, 123 F.3d at 295-96). The same burden shifting framework that applied to Francis's ADEA and Title VII claims apply to her ERISA claim. Stafford, 123 F.3d at 295 ("To dispel the inference of discrimination which would arise from a prima facie case, True Temper must articulate a non-discriminatory reason for its actions, and then the burden shifts to Stafford to prove this reason is a pretext and the real purpose was denial of ERISA benefits.").

(b)  Application of the Law to the Undisputed Facts

CCCHC does not dispute that Francis has established the first two elements of her prima facie case. Instead, asserting that "Francis was terminated for insubordination and failure to follow proper policies and procedures in regards to reporting absenteeism and tardiness,"[53] CCCHC argues that it is entitled to summary judgment on Francis's ERISA claim because Francis cannot produce evidence from which a reasonable fact finder could conclude that she was discharged in retaliation for exercising an ERISA right, or to prevent her from attaining benefits to which she would have become entitled under an employee benefit plan.[54] In support of this argument CCCHC cites the affidavit and deposition of testimony of Shawn Simme, CCCHC's employment benefits broker during the time of Francis's employment, as evidence that CCCHC maintained a plan with a flat rate for all employees, that individual employees paid one-third and CCCHC paid two-thirds of the employee's insurance costs, and that despite a wide spread in the ages of covered employees, the demographics of employees enrolling in CCCHC's

---

[53]Defendant's MSJ, Docket Entry No. 56, p. 30.

[54]Id. at 28-33. See also id. at 30 ("Francis provides no evidence to support her contention that CCCHC's decision to terminate her on or about July 25, 2013 was motivated by CCCHC not wanting to provide the cost for [her] to receive medical benefits, and thus an attempt to deprive her of her benefits.").

benefit plans stay "pretty stable."[55]  CCCHC also argues that when asked to articulate the basis for her ERISA claim, Francis was only able to state her own subjective belief that "because she is over 50 years old . . . her health insurance costs are high, and 'they' don't want to pay for it."[56]  Citing <u>Hazen Paper Co. v. Biggins</u>, 113 S. Ct. 1701 (1993), CCCHC argues that Francis's subjective belief that she was discharged with specific intent to interfere with her entitlement to ERISA benefits is not sufficient to raise a genuine issue of material fact for trial.

Asserting that she has established a prima facie case of an ERISA violation,[57] Francis argues that summary judgment is not warranted on her ERISA claim because "(1) temporal proximity shows a causal link between [her] enrollment and her termination and (2) a genuine [issue] of material fact exists as to whether [she] was denied the opportunity to apply for medical benefits in 2012."[58]

---

[55]<u>Id.</u> at 31-32 (citing Simme Affidavit, Exhibit 8 to Defendant's MSJ, ¶¶ 4-5, 11, Docket Entry No. 58, pp. 1-3; Simme Deposition, Exhibit 9, Docket Entry No. 58-1, p. 108:15-18).

[56]<u>Id.</u> at 30 (citing Francis Deposition, Exhibit 2 to Defendant's MSJ, Docket Entry No. 56-2, pp. 90:14-91:1 ("Q. So the what is the basis of your claim that you were discriminated against on the basis of . . . age for your health insurance?  A. Because I'm over 50 and I know my health insurance is high and I know they don't want to pay so. . .")).

[57]Plaintiff's Response, Docket Entry No. 60, pp. 12-15.

[58]<u>Id.</u> at 13.

Citing <u>Evans v. City of Houston</u>, 246 F.3d 344, 354 (5th Cir. 2001),
for its holding that "a time lapse of up to four months has been
found sufficient to satisfy the causal connection for summary
judgment purposes,"[59] Francis argues that a causal link exists
between her enrollment and her termination because she

> was enrolled in medical benefits in June 2013. . . [She]
> was then terminated the following month on July 25, 2013.
> . . Because she was terminated in less than sixty (60)
> days, a time lapse of less than four months, temporal
> proximity exists.    This, combined with Defendant's
> pretextual reason for terminating Ms. Francis (discussed
> above), solidifies the causal link between Mr. Francis's
> enrollment and termination.[60]

The undisputed evidence shows that Francis enrolled for
medical benefits on May 1, 2013, her enrollment in CCCHC's medical
benefits plan became effective on June 1, 2013, and continued until
the date of her discharge on July 25, 2013.[61]   Francis neither
argues nor presents any evidence from which a reasonable fact
finder could conclude that she or CCCHC expected that she would
have significant medical problems or incur significant medical
expenses.   Because Francis has not presented evidence as to any

---

[59]<u>Id.</u>

[60]<u>Id.</u> at 14.

[61]<u>See</u> Employee Election Form for Medical Effective May 15, 2012
and for Dental Effective May 1, 2012, Exhibit J to Plaintiff's
Response, Docket Entry No. 60-1, p. 37; Affidavit of Shawn Simme,
Exhibit 8 to Defendant's MSJ, ¶ 8, Francis 2013 Enrollment Form,
Exhibit 8-B to Defendant's MSJ, and Certificate of Health Plan
Coverage, Exhibit 8-C to Defendant's MSJ, Docket Entry No. 58, pp.
1-3, 11-18.

likely future claims, the issue is whether there is a basis on which to infer that CCCHC discharged her with the specific intent of retaliating against her for exercising her right to enroll in and ERISA plan for medical benefits in June of 2013, or to prevent her from attaining benefits to which she would have been entitled under the plan.

The Fifth Circuit has stated that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." Swanson v. General Services Administration, 110 F.3d 1180, 1188 (5th Cir.), cert. denied, 118 S.Ct. (1997). But the Fifth Circuit has consistently rejected mere temporal proximity as raising a fact issue on pretext. Id. ("[O]nce the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive."). See Strong v. University Healthcare System, L.L.C., 482 F.3d 802, 808 (5th Cir. 2007) ("[W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation.").

In addition to the evidence of temporal proximity between her enrollment in CCCHC's medical plan and her discharge, Francis argues that her age would affect the cost to the health plan, that CCCHC discharged another employee who was over 45 years of age

within a month of discharging Francis, and that a genuine issue of
material fact exists as to whether she was denied the opportunity
to apply for medical benefits in 2012.[62]  None of the evidence that
Francis cites, either alone or together, is sufficient to raise a
genuine issue of material fact for trial that CCCHC's legitimate,
non-discriminatory reasons for discharging Francis are not true, or
that her discharge was motivated by a specific intent to retaliate
against her for exercising an ERISA right or to prevent attainment
of benefits to which she would have become entitled under an
employee benefit plan.   See Stafford, 123 F.3d at 295.

As evidence that her age would affect the cost to the health
plan, Francis cites Shawn Simme's deposition testimony.[63]  Francis
argues that Simme testified that a person's age factors into the
overall cost of the health plan.[64]  But while Simme testified that
ages are one of the components that goes into determining a health
plan's rates, he also stated that the costs are not dependent on
the age of any one employee, and that the demographics of employees
enrolling in benefits programs seemed to stay pretty stable:

> Q.   Okay.  And just so I'm clear, so the costs are not
>      dependent on the age of an employee?

---

[62]Plaintiff's Response, Docket Entry No. 60, pp. 14-15.

[63]Id. (citing Simme Deposition, pp. 21:22-22:12, Exhibit 9 to
Defendant's MSJ, Docket Entry No. 58-1, p. 7).

[64]Id.

A.   They are not dependent on the age.   Well, I guess
     just to make sure I clarify that.   They are not
     dependent on the age to one employee specifically.
     You know, it's the, you know, ages are one of the
     components that goes into determining a health
     plan's rates.[65]

                     .  .  .

Q.   Okay.  So at the time Ms. Francis was employed with
     Central Care, was Central Care's rate any different
     for employees who were over the age of 40?

A.   No.[66]

                     .  .  .

Q.   You're talking about I guess turnover rate at
     Central Care, and I was just wondering if I guess
     the change of employees if that had changed the
     demographic of the individuals who were receiving
     employee benefits?

A.   .  .  . it seemed like the people -- somebody would
     leave and somebody would come in that was almost
     the same age literally .  .  . very similarly aged as
     far as the people who we saw in the benefits.[67]

As evidence that CCCHC discharged another employee over the

age of 45 within a month of discharging her, Francis points to

Leslie Davis, who CCCHC admits was 50 years old in 2012, and

discharged within a month of Francis.[68]   Missing from Francis's

_____

[65]Simme Deposition, pp. 21:22-22:4, Exhibit 9 to Defendant's
MSJ, Docket Entry No. 58-1, p. 7)

[66]Id. at 22:13-16.

[67]Id. at 108:1-16, Exhibit 9 to Defendant's MSJ, Docket Entry
No. 58-1, p. 28.

[68]Plaintiff's Response, Docket Entry No. 60, p. 15 (citing
Defendant's MSJ, Docket Entry No. 56, p. 31 (stating "Leslie Davis
                                              (continued...)

briefing is any argument or explanation about Davis's discharge capable of establishing that it constitutes evidence from which a reasonable fact finder could conclude that Francis's discharge was motivated by a specific intent to retaliate for exercising an ERISA right or to prevent her from attaining benefits to which she would otherwise have been entitled to receive.

As evidence that she was denied the opportunity to apply for medical benefits in 2012, Francis cites her own deposition testimony that she attempted to enroll in CCCHC's health insurance plan in 2012, but that Mr. Turner in the accounting department told her that she could only enroll in the dental plan, and faxed to her only the dental forms with an "X" over the health portions.[69]  When asked, however, if she questioned Turner as to why she could not enroll for health insurance, and why an "X" had been placed on the document, Francis testified that she did but that his response was something silly that she did not remember:

> Q.   Okay. So you didn't question anyone about why these other areas had been X'd out?
>
> A.   I asked him.  I asked him, "Why can't I get health insurance?"  I don't even remember.  He said something silly to me.  I don't even remember. Just vaguely something like -- some . ..
>
> Q.   And this was Mr. Turner?

---

[68] (...continued)
(50 years old in 2012)").

[69]Id. at 14 (citing Frances Deposition, pp. 71:22-73:13, Exhibit 2 to Defendant's MSJ, Docket Entry No. 56-2, pp 19-20).

A.   At the time.[70]

Francis argues that CCCHC terminated her employment because she is over 50 years of age and the cost of her health insurance must be high.  But Francis has failed to cite any evidence capable of showing that she or CCCHC expected that she would have significant medical problems or incur significant medical expenses, or that Francis's enrollment would impact the rate that CCCHC paid to provide health insurance to its employees.  The uncontroverted evidence in the record shows that CCCHC has always maintained a plan that has a flat rate for all employees, regardless of age, but that while there is a wide spread in the ages of covered employees, the employees who have left CCCHC have been replaced by similarly aged persons, and demographics of employees enrolling in CCCHC's benefit plans seems to stay pretty stable.[71]  See, e.g., Nero v. Industrial Molding Corp., 167 F.3d 921, 927-28 (5th Cir. 1999) (plaintiff argued that his employer fired him partially "to avoid paying any future claims" after he had a heart attack and open heart surgery; plaintiff showed that this claim was the costliest health condition among employees that year and that the employer would likely face additional claims up to $25,000).  Francis has

_____

[70]Defendant's MSJ, Docket Entry No. 56, p. 32 (citing Francis Deposition, p. 77:18-25, Exhibit 2 to Defendant's MSJ, Docket Entry No. 56-2, p. 21.

[71]Id. at 31 (citing Simme Affidavit, Exhibit 8 to Defendant's MSJ, Docket Entry No. 58, pp. 1-3, ¶¶ 4-5, 11, Simme Deposition, p. 108:1-16, Exhibit 9, Docket Entry No. 58-1, p. 28).

failed to present any evidence from which a reasonable fact finder could conclude that CCCHC's stated, legitimate, non-discriminatory reasons for discharging her were not true but, were instead, pretexts for discrimination based on a specific intent to retaliate against her for having enrolled in an ERISA plan, or to prevent her from attaining ERISA benefits. Accordingly, the court concludes that CCCHC is entitled to summary judgment of Francis's ERISA claim for wrongful discharge.

## IV.   Conclusions and Order

For the reasons explained above, the court concludes that CCCHC is entitled to summary judgment on all of Francis's claims. Accordingly, Defendant's Motion for Summary Judgment (Docket Entry No. 56) is **GRANTED**.

**SIGNED** at Houston, Texas, on this 25th day of April, 2016.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-36-